The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on October 29, 2015, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: October 29, 2015**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 14-16264 |
| | ) | |
| GARY N. AUERBACH & | ) | |
| DALIA AUERBACH, | ) | Chapter 7 Proceedings |
| Debtors. | ) | |
| _____ | ) | |
| | ) | Adversary Proceeding |
| LARRY GAMBRELL, | ) | No. 14-1218 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Arthur I. Harris |
| | ) | |
| GARY N. AUERBACH & | ) | |
| DALIA AUERBACH, | ) | |
| Defendants. | | |

## MEMORANDUM OF OPINION[1]

On December 10, 2014, the plaintiff-creditor, Larry Gambrell, filed this

adversary proceeding seeking: (1) a determination that debts allegedly incurred by

defendant-debtors, Gary and Dalia Auerbach ("debtors") are nondischargeable

---

[1] This Opinion is not intended for official publication.

pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(2)(B); (2) entry of a monetary judgment for approximately $30,000 of actual damages and additional punitive damages in favor of Mr. Gambrell and against the debtors; and (3) costs and attorney's fees. Additionally, Mr. Gambrell objects to the debtors' claim of exemption for two automobiles, a 2004 Lincoln Towncar and a 2005 Buick LeSabre.

For the reasons that follow, the Court: (1) enters judgment in favor of Mr. Gambrell and against Gary Auerbach in the amount of $5,920, plus interest from the date of judgment at the rate provided under 28 U.S.C. § 1961; (2) finds this judgment to be nondischargeable under 11 U.S.C. § 523(a)(6); (3) finds that Mr. Gambrell is not entitled to an award of punitive damages, costs, or attorney's fees; (4) enters judgment in favor of Dalia Auerbach on Mr. Gambrell's claims against her; and (5) overrules Mr. Gambrell's objection to the debtors' claim of exemptions.

## PROCEDURAL HISTORY

This adversary proceeding was preceded by a state court case originally filed by Mr. Gambrell against the debtors and Eastside Transportation Inc. on March 14, 2015. (*Gambrell v. Eastside Transportation Inc., et al,* Cuyahoga C.P. No. CV-14-823674 (filed Mar. 14, 2015)). On October 1, 2014, the debtors filed a

2

voluntary petition for relief under Chapter 7 of the Bankruptcy Code

(Case No. 14-16264), and the state court case was stayed pursuant to 11 U.S.C.

§ 362. On November 10, 2014, a meeting of creditors was held pursuant to

11 U.S.C. § 341(a) and, on November 21, 2014, the Chapter 7 trustee filed a report

of no distribution (Docket No. 10, Case No. 14-16264). On January 14, 2015, the

Court issued an order of discharge (Docket No. 15, Case No. 14-16264).

On December 10, 2014, Mr. Gambrell initiated the above-captioned

adversary proceeding by filing a complaint alleging that the debtors:

(1) fraudulently induced Mr. Gambrell to invest money in, and subsequently

withdraw from, a limited liability corporation; (2) fraudulently misrepresented

their ownership of vehicles on their bankruptcy filings; (3) wrongfully made a

down payment on a vehicle using Mr. Gambrell's credit card after inducing

Mr. Gambrell to withdraw from the limited liability corporation; and (4) converted

the limited liability corporation into a domestic for profit corporation, thereby

depriving Mr. Gambrell of his ownership interest in assets of the limited liability

corporation. Mr. Gambrell also objects to the debtors' claim of exemption

regarding two vehicles, a 2004 Lincoln Towncar and a 2005 Buick LeSabre.

On February 17, 2015, the debtors answered the complaint, denying the

substantive allegations and asserting, among other defenses, that any debt owed

3

Mr. Gambrell was discharged in the debtors' bankruptcy proceeding. A trial was held on September 16, 2015. The Court heard testimony from plaintiff-creditor Larry Gambrell and defendant-debtor Gary Auerbach. The Court admitted plaintiff's exhibits 1, 2, 4, 5, 6, 7, 8, 9, and 10 without objection. The Court also admitted defendants' exhibits A, B, C, D, F, G, H, I, and J without objection. The Court admitted defendants' exhibits Q and R over plaintiff's objection. This memorandum constitutes the Court's findings of fact and conclusions of law as required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FINDINGS OF FACT

The findings of fact contained in this memorandum of opinion reflect the Court's weighing of the evidence, including credibility of the witnesses. "In doing so, the court considered the witnesses' demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court considered the testimony of all the trial witnesses, exhibits admitted into evidence, and stipulations. The following facts were established at trial by a preponderance of the evidence.

4

*Eastside LLC is Formed*

Around June of 2006, Mr. Gambrell and Gary Auerbach entered into an agreement to run a transportation company. Generally, the terms of this agreement were that Mr. Gambrell would provide capital for the company and Mr. Auerbach would secure customers and operate the business out of his home. Additionally, Mr. Gambrell would use his skills as a mechanic to maintain Eastside LLC's vehicles. On June 26, 2006, Mr. Gambrell and Mr. Auerbach formed Eastside Transportation, LLC ("Eastside LLC") for this purpose. Eastside LLC then secured a number of clients and began operations.

Mr. Gambrell initially invested approximately $10,000 in the business but later made additional advancements. Mr. Gambrell used a U.S. Bank credit card account and an American Express credit card account to pay these business expenses. Both of these accounts were established in Eastside LLC's name, but Mr. Gambrell signed as the sole responsible party and extended his personal credit to the corporation. Mr. Gambrell and Mr. Auerbach were both authorized users of the American Express account and both were issued credit cards which bore the names of Eastside LLC and the cardholder. At some point, Mr. Gambrell transferred some of the American Express debt to Chase Bank. Additionally, around the time Eastside LLC was formed, Mr. Gambrell advanced approximately

5

$1,700 to Mr. Auerbach.

For his services, Eastside LLC paid Mr. Auerbach a salary. Around 2007, Dalia Auerbach started working at Eastside LLC and drew a salary for her services, which included driving and bookeeping. By 2012, the debtors' salaries from Eastside LLC were their only sources of income. Mr. Gambrell was not paid a salary although he devoted some time to repairing Eastside LLC's vehicles and transporting customers. Around 2008, Mr. Gambrell established Larry's Automotive Service LLC. Mr. Gambrell continued repairing vehicles for Eastside, but billed for this work separately through Larry's Automotive Service LLC. Eastside LLC paid for approximately half of this work through 2010 at which time Mr. Gambrell stopped repairing vehicles for Eastside LLC. As of July 29, 2010, Eastside LLC owed Larry's Automotive Service LLC $6,358.24.

*Mr. Gambrell Withdraws and Eastside Transportation Inc. is Formed*

Around late 2011 or early 2012, Mr. Gambrell decided to withdraw from Eastside LLC to pursue his own business and because he did not like the direction taken by Eastside LLC. An arrangement was made in which Mr. Gambrell withdrew from Eastside LLC in exchange for the debtors repaying Mr. Gambrell the money he invested in Eastside LLC. Although this arrangement was not made in writing, Mr. Gambrell conceded that he understood his withdrawal to mean that

6

he would have nothing more to do with the day-to-day operation of the company. The exact terms of repayment are the heart of the dispute between Mr. Gambrell and the debtors. Although Mr. Gambrell concedes that he never discussed the arrangement with Dalia Auerbach, Mr. Gambrell claims that Mr. Auerbach promised that all of the debt would be repaid before the debtors took any additional money out of the company. Mr. Auerbach concedes that he promised to repay Mr. Gambrell's credit card debt, but he denies that he promised to do so before taking any additional money out of Eastside LLC.

Mr. Gambrell's testimony on this point of conflict was, at best, equivocal. Mr. Gambrell conceded that he initiated his withdrawal and that, at the time he withdrew, he was aware that Eastside LLC was the debtors' only source of income. The Court does not find it credible that Mr. Auerbach would promise to entirely forgo his only source of livelihood or that Mr. Gambrell, the debtors' business partner for approximately six years, could have justifiably relied on such an impression.

Additionally, for approximately two years after Mr. Gambrell withdrew from Eastside LLC, the debtors made regular payments to both of Mr. Gambrell's credit card accounts. From January 3, 2012, through August 2, 2013, the debtors paid approximately $300 per month to Mr. Gambrell's American Express credit

7

card account. The debtors made additional payments of $302 on November 2, 2013, and $313 on July 29, 2014. The debtors also made regular payments to Mr. Gambrell's U.S. Bank credit card account from July 24, 2006, through August 15, 2014. The amounts of these payments varied. The debtors made monthly payments of $160 from June 16, 2011, through June 14, 2014. From July 16, 2014, through August 15, 2014, these payments decreased to $125 per month. On the advice of his accountant, on June 1, 2012, Mr. Auerbach converted Eastside LLC from a limited liability corporation into a domestic for profit corporation, Eastside Transportation Inc. ("Eastside Inc."), of which Dalia Auerbach became a 50% owner. Mr. Gambrell had no ownership interest in Eastside Inc., but Eastside Inc. continued to make payments to Mr. Gambrell's credit cards. From the time of Eastside Inc.'s formation through the filing of the debtor's bankruptcy, Eastside Inc. paid approximately $5,389.85 on the American Express card account and $3,830 on the U.S. Bank Account. During this time the debtors continued to draw salaries from Eastside Inc. As of September 16, 2014, the total balance owed on the American Express account was $15,338.54. As of September 17, 2014, the total balance owed on the U.S. Bank account was $4,309.06. From December 17, 2008, through August 18, 2011, Mr. Gambrell also made payments to Chase Bank for money loaned to Eastside LLC in the

8

amount of $5,416.

Based on all of the evidence, the Court finds that Mr. Gambrell has failed to establish by a preponderance of the evidence that the debtors agreed to forgo taking any money out of Eastside LLC until Mr. Gambrell was repaid in full. Instead, the terms of the oral withdrawal agreement were most likely as follows. Mr. Gambrell agreed to withdraw from Eastside LLC, giving up his ownership interest in the company and right to participate in operations. In exchange for Mr. Gambrell's withdrawal, the debtors were to: (1) pay off Mr. Gambrell's credit card debt by continuing to make payments on a monthly basis; and (2) not incur any additional debt on the credit card accounts for which Mr. Gambrell was responsible.

*Down Payment on Automobile Lease*

In October of 2012, after Mr. Gambrell withdrew from Eastside LLC, Mr. Auerbach spent approximately $4,000 from Mr. Gambrell's American Express credit card account as a down payment on the lease of a vehicle for Eastside Inc. Mr. Auerbach conceded that the $4,000 charge was made without Mr. Gambrell's knowledge or express consent and that, after Mr. Gambrell's withdrawal, he had lost access to a relatively cheap line of credit. Although Mr. Gambrell did not try to cancel the charge after he was made aware of it, Mr. Gambrell did confront

9

Mr. Auerbach, who assured him that the money would be repaid during the first quarter of the following year. After this confrontation, the debtors continued to make regular payments to the American Express account. There was no evidence that Dalia Auerbach made any withdrawals or charges against the American Express account after Mr. Gambrell withdrew from Eastside LLC.

*2004 Lincoln Towncar and 2005 Buick LeSabre*

During 2012, Eastside Inc. operated with six different vehicles in their fleet, including a 2004 Lincoln Towncar and a 2005 Buick LeSabre. Although Eastside LLC purchased both of these vehicles used, the 2004 Lincoln Towncar was always titled to Gary Auerbach and, until it was destroyed in an accident, the 2005 Buick LeSabre was always titled to Dalia Auerbach. Both vehicles were listed on Eastside Inc.'s depreciation schedules for the year 2012, and both were previously used by Eastside LLC. Both of these vehicles were listed on the debtors' Schedule B, and the debtors claimed exemptions on their Schedule C for both of these vehicles under Ohio Rev. Code Ann. § 2329.66(A)(2).

## JURISDICTION

The Court has jurisdiction over this matter. A determination as to the dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The allowance or disallowance of an exemption from property of

10

the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This Court has

jurisdiction over core proceedings pursuant to 28 U.S.C. §§ 157(a) and 1334 and

Local General Order No. 2012-7, entered by the United States District Court for

the Northern District of Ohio.

All of Mr. Gambrell's claims against the debtors are unliquidated, *i.e.*, no

court has yet fixed an amount of damages, costs, or attorney's fees. Nor has any

court found that the elements entitling Mr. Gambrell to damages, costs, or

attorneys fees have been established by any burden of proof. Nevertheless, the

absence of a prior judgment does not prevent a bankruptcy court from entering a

judgment that fixes the amount, if any, of unliquidated claims in the context of

determining the dischargeability of the underlying debt. *See* 28 U.S.C.

§ 157(b)(2)(B); *Hart v. S. Heritage Bank (In re Hart),* 564 F. App'x. 773 (6th Cir.

2014). Bankruptcy courts retain "jurisdiction to adjudge the validity and amount

of a claim" when determining dischargeability, *Longo v. McLaren (In re*

*McLaren)*, 3 F.3d 958, 965 (6th Cir. 1993), even after the Supreme Court's

decision in *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594 (2011). S*ee Hart,*

564 Fed. App'x. 773.

## CONCLUSIONS OF LAW

Mr. Gambrell asks the Court to determine that the money allegedly owed to

11

him by the Auerbachs is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A)

and (a)(2)(B). Although Mr. Gambrell did not specifically plead for relief under

11 U.S.C. § 523(a)(6), the Court finds that Mr. Gambrell has pleaded facts

sufficient to show that a claim under this section has substantial plausibility and

which adequately informed the debtors of the factual basis for such a claim.

*Johnston v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam)

(summarily reversing dismissal that had been based on plaintiff's failure to invoke

42 U.S.C. § 1983 in complaint). The Court is satisfied that this issue was tried

with the parties' express or implied consent, and so the Court must treat these

claims as if raised in the pleadings. Fed. R. Civ. P. 15(b)(2);

Fed. R. Bankr. P. 7015.

<u>Validity of State Law Claims</u>

Before determining whether Mr. Gambrell's unliquidated claims are

dischargeable under the Bankruptcy Code, the Court must first look to state law to

determine the validity and fix the amount of Mr. Gambrell's claims against the

debtors. *See Grogan v. Garner*, 498 U.S. 279, 283 (1991) (distinguishing between

creditor's burden to prove validity of a claim and nondischargeability). Here, the

appropriate state law is that of Ohio.

Mr. Gambrell framed neither his complaint nor his trial brief in the form of

12

specific, Ohio causes of action which would entitle him to monetary relief.

However, the Court must construe his pleadings so as to secure the just, speedy, and inexpensive determination of this proceeding.  Fed. R. Bankr. P. 1001.

Mr. Gambrell asserts that his claims are nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) ("false pretenses, a false representation, or actual fraud") and 523(a)(2)(B) (false writing).  Additionally, Mr. Gambrell presented facts at trial without objection which raise of claim of nondischargeability under 11 U.S.C. § 523(a)(6) ("willful and malicious injury").  Therefore, the just, speedy, and inexpensive measure is to treat Mr. Gambrell's complaint as having raised Ohio state law claims of fraud and conversion.  The statute of limitations for both fraud and conversion is four years.  OHIO REV. CODE ANN. § 2305.09 (West 2014).

*Ohio Fraud*

Under Ohio law, to prove fraud, a plaintiff must show:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Burr v. Bd. of Cnty. Comm'rs of Stark Cnty.*, 23 Ohio St.3d 69, 73, 491 N.E.2d 1101 (1986).  Fraud must be proved by a preponderance of the

13

evidence. *Household Fin. Corp. v. Altenberg,* 5 Ohio St.2d 190, 514 N.E.2d 667 (1966) (preponderance of the evidence sufficient to prove fraud in action at law); *Andrew v. Power Marketing Direct, Inc.*, 2012-Ohio-4371, 978 N.E.2d 974, ¶ 47 (10th Dist.) (same). Similar to the "actual fraud" provision of 11 U.S.C. § 523(a)(2)(A), Ohio recognizes that, in a cause of action sounding in fraud or deception, "the means of accomplishing the deception [may] be complex or simple–a deep-laid scheme or swindling or a direct falsehood." *Burr*, 23 Ohio St.3d at 75, 491 N.E.2d 1101 (quoting *Bartholomew v. Bentley*, 15 Ohio 659, 666-67 (1846)); *see Mellon Bank v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) ("actual fraud is broader than misrepresentation"). In an Ohio fraud case, the speaker's intent when making the representation must be considered at the time the statement is made. *Link v. Leadworks Corp.*, 79 Ohio App.3d 735, 742-43, 607 N.E.2d 1145 (8th Dist. 1992) ("[A] promise made with a present intention not to perform it is a misrepresentation of an existing fact–the speaker's present state of mind."). However, "[t]he general rule is that fraud cannot be predicated upon a representation concerning a future event." *Id.*

Mr. Gambrell asserts two theories of fraud by false misrepresentation and one broader theory of a scheme of actual fraud. Under all of these theories,

14

Mr. Gambrell did not meet his burden of proving valid claims of Ohio common law fraud by a preponderance of the evidence.

The first theory of Mr. Gambrell's false misrepresentation claim is that Mr. Auerbach misrepresented that the debtors would not take any money out of Eastside LLC until Mr. Gambrell was repaid in full. The details of Mr. Gambrell's oral agreement to withdraw from Eastside LLC were never made clear at trial and, in all likelihood, were never fully discussed by Mr. Gambrell and Mr. Auerbach prior to Mr. Gambrell's withdrawal. However, as discussed previously, Mr. Gambrell has failed to demonstrate by a preponderance of the evidence that Mr. Auerbach agreed to forgo taking any additional money from Eastside LLC until Mr. Gambrell was repaid in full.

The second theory presented by Mr. Gambrell is that Mr. Auerbach misrepresented that he would not incur any additional debt on the credit card accounts for which Mr. Gambrell was responsible. Here, Mr. Gambrell met his burden of proving that this representation was made. Further, this representation was clearly material to the transaction at hand and was justifiably relied on by Mr. Gambrell. Mr. Gambrell would not have withdrawn from Eastside LLC while gratuitously allowing the company to run up debt in his name. Even Mr. Auerbach conceded that the company lost access to Mr. Gambrell's line of

15

credit after the withdrawal.  However, Mr. Gambrell was unable to prove that

Mr. Auerbach made the representation with at least recklessness as to its truth and

the intent of misleading Mr. Gambrell into relying upon it.  Mr. Gambrell

withdrew, at the latest, in early 2012, but the $4,000 charge was not made until

October 23, 2012.  From January 3, 2012, through November 2, 2012, the debtors

paid approximately $300 per month to Mr. Gambrell's American Express credit

card account.  During this time the only charge incurred on this account, besides

interest and one late fee, was the $4,000 charge.  A course of such regular

payments following Mr. Gambrell's withdrawal does not support the conclusion

that, at the time of the withdrawal, Mr. Auerbach possessed the requisite

fraudulent intent.

     Similarly, Mr. Gambrell cannot show that Mr. Auerbach's promise to repay

the $4,000 down payment charged from the American Express account during the

first quarter of the following year was made recklessly or with an intent to

mislead.  The $4,000 charge did increase the debt owed on the American Express

account from $10,430.30 to $14,430.30.  However, the evidence showed that, after

promising to repay the money, Mr. Auerbach caused Eastside Inc. to continue

making substantial payments to this account.  After the $4,000 charge was made,

from November 2, 2012, through March 3, 2013, Eastside Inc. paid $1,986.14 into

the American Express account.  Such conduct is entirely consistent with a subjective intent to repay Mr. Gambrell.  *Cf. Ewing v. Bissonnette (In re Bissonnette)*, 398 B.R. 189, 194 (Bankr. N.D. Ohio 2008) ("[A]s a general rule, the greater the extent of a debtor's performance, the less likely it will be that they possessed the intent to defraud.").

Finally, Mr. Gambrell claims that the debtors engaged in a broader, fraudulent course of conduct that culminated in his withdrawal from Eastside LLC, which then allowed the debtors to divest his interest in the limited liability corporation by converting Eastside into a domestic for profit corporation without his knowledge.  The *sine qua non* of such a scheme would be Mr. Gambrell's withdrawal from Eastside LLC.  However, the facts established at trial show that Mr. Gambrell willingly withdrew from Eastside LLC in exchange for the debtors' promise to repay his investment.  Although Mr. Gambrell claimed that, prior to his withdrawal, he was the subject of some verbal abuse from Dalia Auerbach, Mr. Gambrell conceded that he initiated his withdrawal because he had another business and was unhappy with the direction taken by Eastside LLC. Furthermore, even after the conversion, the debtors caused Eastside Inc. to repay over $9,000 of the money owed to Mr. Gambrell over the course of approximately two years.  Such payments are inconsistent with a course of conduct intended to

17

deceive and, instead, are entirely in line with the arrangement made when Mr. Gambrell withdrew from Eastside LLC. *Cf. Bissonnette*, 398 B.R. at 194. Likewise, it is entirely consistent with an intent to honor the withdrawal arrangement that the debtors did not consult Mr. Gambrell about the decision to convert Eastside LLC into Eastside Inc. At the time this decision was made, Mr. Gambrell had withdrawn from the company, which he understood to mean that he would have nothing more to do with the day-to-day operations of the company. Therefore, Mr. Gambrell did not meet his burden of proving Ohio common law fraud by a preponderance of the evidence against either of the defendants.

*Ohio Conversion*

Mr. Gambrell also asserts that Mr. Auerbach committed conversion, specifically by making a $4,000 charge to his American Express account and by converting Eastside LLC to into a domestic, for profit corporation.

In Ohio, conversion is "any exercise of dominion or control wrongfully exerted over the personal property of another in denial of or under a claim inconsistent with the owner's rights." *Wulinger v. Cannella Response Television, Inc.*, 865 F. Supp. 2d 836, 843 (N.D. Ohio 2011) (citing *Allan Nott Enters., Inc. v. Nicholas Starr Auto, L.L.C*, 110 Ohio St.3d 112, 120, 851 N.E.2d 479 (2006)).

18

Traditionally, conversion extended only to tangible chattels, but the concept has been applied to intangible rights in Ohio, such as drafts and bank passbooks. *See Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St.2d 224, 226-27, 351 N.E.2d 454 (1976), *rev'd on other grounds*, 433 U.S. 562 (1977). "[T]he correct approach is to analyze the particular type of intangible asset, to see if allowing a conversion claim makes sense." *Elias v. Gammel*, 8th Dist. Cuyahoga No. 83365, 2004-Ohio-3464, ¶ 17 (quoting *Schafer v. RMS Realty*, 138 Ohio App.3d 244, 285, 741 N.E.2d 155 (2d Dist. 2000)). In making this determination, a primary concern is "the difficulty in deciding exactly what had been taken, as a basis for assessing damages." *Schafer*, 138 Ohio App.3d at 283, 741 N.E.2d 155. "[W]hile it is the general rule in Ohio that money is intangible property that cannot be subject to conversion, there is an exception when specifically identified monies are at issue." *Gascho v. Global Fitness Holdings*, *LLC*, 863 F. Supp. 2d 677, 700 (S.D. Ohio 2012). Conversion must be proved by a preponderance of the evidence. *See Columbus Bar Ass'n v. Teaford*, 6 Ohio St.2d 253, 254, 217 N.E.2d 872 (1966).

The evidence at trial established by a preponderance of the evidence that Mr. Auerbach converted $4,000 from Mr. Gambrell's line of credit with American Express by making the unauthorized charge in October 2012. To make out a claim

19

of conversion under Ohio law, Mr. Gambrell had to prove: (1) his ownership or right to possession of the American Express account at the time of the conversion; (2) Mr. Auerbach's conversion by a wrongful act or disposition of Mr. Auerbach's property rights; and (3) damages. *Gascho*, 863 F. Supp. 2d at 700 (citing *Dice v. White Family Cos.*, 173 Ohio App.3d 472, 2007-Ohio-5755, 878 N.E.2d 1105, ¶ 17 (2d Dist.)).  Although Mr. Auerbach possessed a card for this account, the Court finds by a preponderance of the evidence that Mr. Gambrell was the sole responsible party for the American Express account and that Mr. Auerbach's authority to use the account – both express and implied – ended when Mr. Gambrell withdrew from Eastside LLC.  By drawing $4,000 from this account, Mr. Auerbach wrongfully exercised dominion and control over the account without the necessary permission or authority at the moment the charge was made.  *Cf.* OHIO REV. CODE ANN. § 2913.02 (West 2014) (defining criminal theft as "obtaining or exerting control" of another's property "without the consent" or "beyond the scope of the express or implied consent of the owner or person authorized to give consent[.]").  Finally, the issue of damages here is clear, and there is no difficulty in finding what was taken from Mr. Gambrell.  The $4,000 charge in October 2012 extended Mr. Gambrell's liability on his American Express line of credit from $10,430.30 to $14,430.30.  Although, the evidence

20

showed that Mr. Auerbach caused Eastside Inc. to continue making payments to this account, the conversion was complete at the moment of the taking, and there is no evidence that Mr. Auerbach significantly increased the payments to the American Express account – which he was already obligated to make – after the $4,000 charge was incurred.

This situation is distinguishable from cases where the alleged conversion is premised on the unlawful retention of money or the claim is for an obligation to deliver a sum certain. *See, e.g., Gascho*, 863 F. Supp. 2d at 700 (dismissing conversion claim where conduct was based on express contract absent allegations that plaintiffs were entitled to a "particular, segregated, and an identifiable collection of money"). In such cases, it is often stated that:

> [a]n action alleging conversion of cash lies only where the money involved is "earmarked" or is specific money capable of identification, e.g., money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum.

*Id.* (quoting *Haul Transport of VA, Inc. v. Morgan*, 2d Dist. Montgomery Case No. CA 14859, 1995 WL 328995, *4 (June 2, 1995)). In this case, the conversion was not premised on the unlawful retention of money, breach of contract, or failure to fulfill a fiduciary obligation. Here, the conversion was the

21

unlawful use of Mr. Gambrell's line of credit which resulted in clearly identifiable damage to Mr. Gambrell in the amount of $4,000 as of October 2012. *Cf. Digital Camera Int'l Ltd. v. Antebi*, No. 11-CV-1823, 2014 WL 940723, *4 n.3 (N.D.N.Y. 2014 (discussing controversy surrounding credit card transactions as the basis for conversion action); *Pfeiffer v. Wulster*, Adversary No. 09-02015, 2011 WL 1045355, *5 (Bankr. D. N.J. 2011) (finding conversion of funds from plaintiff's credit line because of the proprietary nature of credit cards), *aff'd* 2012 WL 589564. For the above reasons, Mr. Gambrell makes out a claim for conversion against Mr. Auerbach under Ohio law and has proven actual damages in the amount of $4,000 as of October 23, 2012 – the date the charge was made.

Mr. Gambrell also alleges that the debtors converted his ownership share of Eastside LLC when the debtors converted Eastside LLC to Eastside Inc. However, the facts established at trial show that Mr. Gambrell willingly withdrew from Eastside LLC in exchange for Mr. Auerbach's promise to repay his investment. In doing so, Mr. Gambrell gave up his ownership interest in the company and did not have a protectable property interest in Eastside LLC at the time the debtors converted it to Eastside Inc.

22

*Prejudgment Interest*

In Ohio, "the general rule in conversion actions is that the plaintiff is awarded interest from the time of conversion." *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 412, 629 N.E.2d 500 (9th Dist. 1993); *see Persky, Shapiro, Salim, Esper, Arnoff & Nolfi Co. v. Guyuron*, 8th Dist. Cuyahoga Case No. 77249, 2000 WL 1867407, *8-10 (Dec. 14, 2000) ("[T]he common law principle of prejudgment interest survives the enactment of R.C. 1343.03.").  Although the Court does not have perfect information concerning the American Express account's interest rate at all relevant times, Mr. Gambrell proved by a preponderance of the evidence that the American Express account has been accruing interest at a variable annual percentage rate of approximately 16 percent. After Mr. Auerbach made the $4,000 charge, Eastside Inc. continued to make monthly payments to that account through August 2, 2013, and two additional payments on November 2, 2013, and July 29, 2014.  At the time the charge was made, the debtors were already obligated to repay over $10,000 to the American Express account and at no time thereafter did this amount fall below $4,000. *Cf. In re Slane*, 537 B.R. 864, 869 n.3 (Bankr. N.D. Ohio 2015) (noting that the selection of a tracing rule is a case specific judgment in Bankruptcy Court); *Bethesda Hospital v. Wolf*, 1st Dist. Hamilton Case No. C-77681, 1979 WL

23

208644, *3 (Jan. 17, 1979) (applying a first in, first out approach to trace allegedly exempt fund). Therefore, the Court will allocate all of the debtors' American Express payments to the debts already in existence at the time of the $4,000 conversion in October 2012. To calculate prejudgment interest from the time of the conversion until date of judgment, the Court will use a simple 16 percent annual interest rate, without compounding, or $640 per year for three years. This yields $1,920 in prejudgment interest for a total judgment of $5,920.

<em>Punitive Damages</em>

In Ohio, "[p]unitive damages may be recovered in a conversion action when the conversion involves elements of fraud, malice, or insult." *Parrish v. Machlan*, 131 Ohio App.3d 291, 296-97, 722 N.E.2d 529 (1st Dist. 1997) (citing *Villella v. Waikem Motors, Inc.*, 45 Ohio St.3d 36, 543 N.E.2d 464 (1989)). Under Ohio law, malice is: (1) a state of mind "characterized by hatred, ill will, or a spirit of revenge; or (2) a conscious disregard for the rights and safety of other persons that has a great possibility of causing substantial harm." *Villella*, 45 Ohio St.3d at 37, 543 N.E.2d 464. The burden of proving entitlement to punitive damages is on the plaintiff and must be satisfied by clear and convincing evidence. O.R.C. § 2315.21(D)(4); *Cabe v. Lunich*, 70 Ohio St.3d 598, 601, 640 N.E.2d 159 (1994). The Ohio Supreme Court has defined "clear and convincing evidence" as that

24

evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cleveland Bar Assoc. v. Cleary*, 93 Ohio St.3d 191, 198, 2001-Ohio-1326, 754 N.E.2d 235, 243 (2001). However, the decision to award punitive damages is within the trial court's discretion. *Cabe*, 70 Ohio St.3d at 602-03, 640 N.E.2d 159.

The Court finds that Mr. Gambrell has failed to establish, by clear and convincing evidence, that Mr. Auerbach acted with malice – as defined under Ohio law – regarding the conversion of $4,000 from Mr. Gambrell's American Express account. The Court simply is not left with a "firm belief or conviction" that Mr. Auerbach acted with hatred, ill will, a spirit of revenge or a conscious disregard for the rights and safety of others that had a great probability of causing substantial harm to Mr. Gambrell. The factors weighing most heavily in the Court's finding that Mr. Gambrell did not show malice by clear and convincing evidence are that: (1) Mr. Gambrell did not specifically tell Mr. Auerbach to stop using the credit card after his withdrawal; (2) Mr. Gambrell did not cancel the credit card after his withdrawal; and (3) the debtors caused Eastside Inc. to continue making payments on the American Express account after the $4,000 withdrawal. Therefore, Mr. Gambrell has not met his burden of proving that punitive damages should be awarded in this case.

25

*Attorney's Fees and Costs*

The prevailing litigant in a bankruptcy proceeding typically is not entitled to attorney's fees. *See Bissonnette*, 398 B.R. at 196 (citing *Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Electric Co.*, 549 U.S. 443 (2007)). This general rule may be trumped by statute, contract, or rule of law authorizing the award of attorney's fees. *Id.* The Court does not find any grounds for an award of attorney's fees in this case. Such fees are not authorized under the Bankruptcy Code for this proceeding, and there is no contractual right to attorney's fees in this case. Attorney's fees may be awarded under Ohio law, but are limited to cases in which punitive damages are proper. *Villella*, 45 Ohio St.3d at 41, 543 N.E.2d 464. As explained above, Mr. Gambrell is not entitled to punitive damages in this case and, therefore, is not entitled to attorney's fees.

Under Bankruptcy Rule 7054(b), "the court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." Unlike Civil Rule 54(d), where the default rule is to award costs to the prevailing party, in bankruptcy cases, the award of the costs under Bankruptcy Rule 7054(b) is within the sound discretion of the bankruptcy court. *Stuebben v. Gioioso (In re Gioioso)*, 979 F.2d 956, 962 (3d Cir. 1992). Based on the totality of the circumstances, including the relative size of the judgment compared to the

26

amount sought, the Court declines to award costs to Mr. Gambrell in this

proceeding.

<u>Nondischargeability</u>

Having found that the only claim Mr. Gambrell proved against the debtors

was a conversion claim against Mr. Auerbach, the Court turns now to the issue of

whether this claim is nondischargeable. In seeking an exception to discharge, a

creditor bears the burden of proof by a preponderance of the evidence.

*See Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277,

280-81 (6th Cir. 1998)*.*  Discharge exceptions are to be strictly construed in favor

of the debtor.  *Id.*  Because Mr. Gambrell failed to establish any state law fraud

claims, the Court need only concern itself with the nondischargeability of the

claim for conversion under 11 U.S.C. § 523(a)(6).

Section 523 of Title 11 of the United States Code provides in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or
> 1328(b) of this title does not discharge an individual debtor from any debt –
> > . . . .
> > (6) for willful and malicious injury by the debtor to another
> > entity or to the property of another.

The Sixth Circuit has held that to prevail under § 523(a)(6) the plaintiff must

prove by a preponderance of the evidence that the debtor acted willfully and

maliciously.  *See Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463

27

(6th Cir. 1999). To be willful, the Supreme Court stated that the injury must be deliberate or intentional, and "not merely a deliberate or intentional *act* that leads to injury." *Kawaauhua v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in the original). "In this sense, § 523(a)(6) requires a debtor to commit an act akin to an intentional, rather than negligent or reckless tort." *Cash Am. Fin. Servs. v. Fox (In re Fox)*, 370 B.R. 104, 119 (B.A.P. 6th Cir. 2007) (citing to *Geiger*, 523 U.S. at 57). Under federal law, one acts maliciously when he consciously disregards his duties or acts without just cause or excuse, but there is no requirement of ill-will or specific intent to harm. *Id.* (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)).

Mr. Auerbach's conversion of the American Express account was both willful and malicious within the meaning of § 523(a)(6). The harm to Mr. Gambrell was the extension of his credit card liability by an additional $4,000 in October 2012. Without a doubt, Mr. Auerbach knew at the time he made this charge that it would have this harmful effect. Further, Mr. Auerbach conceded both that he had lost access to a relatively inexpensive line of credit when Mr. Gambrell withdrew from Eastside LLC and that he charged this money without Mr. Gambrell's knowledge or consent. Such action was substantially certain to cause harm and there was no just cause or excuse for such conduct.

28

*See Pfeiffer*, Adversary No. 09-02015, 2011 WL 1045355, at *6 (citing *Kenna v. Lee (In re Lee)*, 304 B.R. 344, 349 (Bankr. N.D. Illinois 2004)).  Therefore, Mr. Gambrell's conversion claim against Mr. Auerbach, including prejudgment interest, is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).  *See Cohen v. de la Cruz*, 523 U.S. 213 (1998) (statute prevents discharge of all liability arising from the nondischargeable claim).

<u>Objection to Claim of Exemption</u>

Mr. Gambrell also timely objected to the debtors' claim of exemption under Ohio Rev. Code Ann. § 2329.66(A)(2) to two automobiles, a 2004 Lincoln Towncar and a 2005 Buick LeSabre.

Section 541 of the Bankruptcy Code provides that the commencement of a case creates an "estate," which, subject to a few specifically enumerated exceptions, is comprised of all the legal and equitable interests in property a debtor has at the commencement of the case.  *See* 11 U.S.C. § 541.  Section 522 of the Bankruptcy Code allows a debtor to claim certain property as exempt from the estate.  States may adopt the federal exemptions provided in 11 U.S.C. § 522 or establish their own exemptions.  *See* 11 U.S.C. § 522. Ohio has elected to opt-out of the federal exemptions.  *See* Ohio Revised Code § 2329.662.  "Therefore, any property that a debtor domiciled in Ohio seeks to exempt must fall within an

29

exemption authorized under Ohio law or nonfederal bankruptcy law." *Menninger v. Schramm (In re Schramm)*, 431 B.R. 397, 400 (6th Cir. BAP 2010). Section 2329.66(A)(2) of the Ohio Revised Code provides:

> (A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:
> . . . .
> > (2) The person's interest, not to exceed [$3,675], in one motor vehicle[.]

Mr. Gambrell asserts that these vehicles were property of Eastside LLC and, later, of Eastside Inc. Therefore, Mr. Gambrell claims that the debtors had no interest in these vehicles to exempt. Under the Federal Rules of Bankruptcy Procedure, the party objecting to a claim of exemption carries "the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr. P. 4003(c). After the Supreme Court's decision in *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15 (2000), an interesting question exists as to whether Fed. R. Bankr. P. 4003(c) should control a claim of exemption made under state law. *See In re Tallerico*, 532 B.R. 774, 788-89 (Bankr. E.D. Cal. 2015) (discussing the validity of Bankruptcy Rule 4003(c) after *Raleigh*). Under Ohio law, the party claiming the exemption carries the burden of proving entitlement to an exemption. *See Estate of Hersh v. Schwartz*, 195 Ohio App.3d 295,

30

2011-Ohio-3994, 959 N.E.3d 1061, ¶ 13 (1st Dist.). However, in this case it is irrelevant which party bears the burden of proof. Even if the debtors have the burden of proving their entitlement to an exemption in these vehicles, they did so here. The debtors produced copies of titles for these vehicles which showed that the 2004 Lincoln Towncar is titled to Gary Auerbach and, while it existed, the 2005 Buick LeSabre was titled to Dalia Auerbach. This evidence was further supported by Mr. Auerbach's testimony as to the ownership of these vehicles. Moreover, even if the debtors engaged in bad faith by claiming a depreciation allowance for the vehicles on behalf of separate business entities, in all likelihood that would not constitute grounds for disallowing their claim of exemption. *See Law v. Siegal*, ___ U.S. ___, 134 S. Ct. 1188 (2014). Therefore, Mr. Gambrell's objection to the debtors' claim of exemption is overruled.

CONCLUSION

For the reasons stated above, the Court: (1) enters judgment in favor of Mr. Gambrell and against Gary Auerbach in the amount of $5,920, plus interest from the date of judgment at the rate provided under 28 U.S.C. § 1961; (2) finds this judgment to be nondischargeable under 11 U.S.C. § 523(a)(6); (3) finds that Mr. Gambrell is not entitled to an award of punitive damages, costs, or attorney's fees; (4) enters judgment in favor of Dalia Auerbach on Mr. Gambrell's claims

31

against her; and (5) overrules Mr. Gambrell's objection to the debtors' claim of exemptions.

At trial the Court admitted into evidence exhibits proffered by both the plaintiff and the defendants, subject to redaction consistent with Fed. R. Bankr. P. 9037(a). In the event of an appeal from this decision, the Court will request each proffering party to redact the party's own exhibits pursuant to Fed. R. Bankr. P. 9037(a).

IT IS SO ORDERED.